959 F.2d 1468
 60 USLW 2641, 22 Fed.R.Serv.3d 703
 RICHMARK CORP., a California Corporation, Plaintiff,
v.
TIMBER FALLING CONSULTANTS, an Oregon Corporation, Defendant.
TIMBER FALLING CONSULTANTS, an Oregon Corporation,
Counterclaim Plaintiff-Appellee,
v.
RICHMARK CORP., a California Corporation, Peacock Mfg. Co.,
a Texas Corporation, Zhu Yuanchang, Eugene Wang,
James Yang, and Francis Tong,
Counterclaim Defendants,
and
Beijing Ever Bright Industrial Co., a foreign Corporation,
Counterclaim Defendant-Appellant.
 Nos. 91-35966, 91-36059.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1992.
Decided March 30, 1992.
 
 David A. Ranheim, Dorsey & Whitney, Minneapolis, Minn., for appellant.
 John F. Neupert, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before BROWNING, SKOPIL and D.W. NELSON, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 This case presents a number of difficult questions regarding a sensitive area of law and foreign relations. Timber Falling Consultants, Inc. (TFC) won a default judgment for fraud and breach of contract against Beijing Ever Bright Industrial Co. (Beijing), a corporation organized under the laws of the People's Republic of China (PRC) and an arm of the PRC government. As part of an effort to execute that judgment, TFC sought discovery of Beijing's assets worldwide. Beijing resisted those discovery efforts, and refused to comply when ordered to do so by the district court. The district court imposed discovery sanctions, held Beijing in contempt, and ordered contempt fines of $10,000 a day. Beijing contends that PRC secrecy laws prevent it from complying with the discovery order and that it would be subject to prosecution in the PRC were it to comply. It appeals the discovery order, the discovery sanction, the contempt order, and the district court's refusal to vacate the contempt order.[1]
 
 
 2
 While we acknowledge the importance of the interests the State Secrecy statute is designed to protect, we conclude in the circumstances of this case that the PRC's laws limiting disclosure cannot excuse Beijing's failure to comply with the district court's orders. For this reason, we affirm the discovery and contempt orders. We modify the contempt order, however, to make it payable to the court, rather than to TFC.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Beijing contracted to purchase lumber from Richmark Corp. Richmark in turn retained TFC to procure the timber. After the contract fell through, Richmark sued TFC. TFC counterclaimed against Richmark and cross-claimed against all other parties involved, including Beijing, alleging fraud and breach of contract. Beijing failed to appear, apparently because of the interruption in United States-PRC relations which followed the Tienanmen Square incident. All other claims on both sides were dismissed by the district court, but TFC was awarded a $2.2 million default judgment against Beijing. This judgment was entered on June 5, 1990.
 
 
 4
 Beijing appealed this judgment to the Ninth Circuit.[2] Beijing did not post a supersedeas bond or letter of credit, however, so TFC was free to begin efforts to collect the judgment while the appeal was pending. In an attempt to do so, TFC served Beijing with a number of discovery requests and interrogatories which sought to identify Beijing's assets worldwide. Beijing did not respond to those requests, and instead moved for a stay of discovery pending resolution of its Rule 60(b) motion for relief from the judgment. TFC in turn filed a motion to compel discovery.
 
 
 5
 On October 15, 1990, the district court denied Beijing's Rule 60(b) motion, mooting Beijing's request for a stay, and granted TFC's motion to compel discovery. Richmark Corp. v. Timber Falling Consultants, 747 F.Supp. 1409 (D.Or.1990). Beijing then appealed the denial of its Rule 60(b) motion,[3] and on November 27, 1990, petitioned the district court for a stay of discovery pending appeal. The district court denied this motion on January 11, 1991. Beijing promptly petitioned the Ninth Circuit for a stay of discovery. Its petition was denied on February 19, 1991.
 
 
 6
 On January 28, 1991, Beijing for the first time requested advice from its government on how to respond to TFC's discovery requests. Specifically, Beijing sought guidance as to whether PRC "State Secrecy Laws" prohibited it from disclosing the requested information concerning its assets. This request was passed by the State Secrecy Bureau to another arm of the State Council, the Ever Bright Group, which was in charge of overseeing Beijing's operations. On April 16, 1991, the Ever Bright Group sent written notification to Beijing that almost all of its financial information was classified a state secret and could not be disclosed.
 
 
 7
 Meanwhile, following the denial of the stay petition by the Ninth Circuit, TFC moved for contempt and discovery sanctions against Beijing. In its answer, Beijing for the first time raised the issue of the State Secrecy Laws. The district court denied the request for sanctions on March 4, but it rejected Beijing's contention that PRC law prevented it from complying as "untimely and without merit," and again ordered Beijing to respond to TFC's discovery requests. On March 5, Beijing moved the district court for a protective order against discovery, on the same grounds. The district court denied this motion on March 14.
 
 
 8
 Beijing still refused to comply with the discovery orders. On April 4, 1991, the district court held Beijing in contempt of its October 15 and March 4 orders. It awarded TFC its attorney's fees and costs incurred in seeking discovery as a discovery sanction, and imposed contempt fines of $10,000 a day, payable to TFC, until Beijing complied with the discovery orders. However, the district court indicated that it would vacate the contempt order if Beijing complied with the discovery orders within 60 days.
 
 
 9
 On May 15, 1991, Beijing provided the limited amount of information the Ever Bright Group allowed it to disclose,[4] and moved the district court to vacate the contempt sanctions. On July 24, 1991, the district court denied the motion to vacate. Richmark Corp. v. Timber Falling Consultants, 138 F.R.D. 132 (D.Or.1991).
 
 
 10
 Beijing appeals on a variety of grounds from the March 4 discovery order, the April 4 contempt order, and the July 24 denial of its motion to vacate.
 
 STANDARD OF REVIEW
 
 11
 District court rulings compelling discovery are reviewed for an abuse of discretion. Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 463 (9th Cir.1990). So too are district court decisions imposing discovery sanctions, Halaco Engineering Co. v. Costle, 843 F.2d 376, 379 (9th Cir.1988), findings of civil contempt, General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir.1986), the amount of costs and fees awarded as a discovery sanction, id. at 1380, and the amount of the civil contempt sanction, United States v. Asay, 614 F.2d 655, 661 (9th Cir.1980). These decisions should not be reversed "absent a definite and firm conviction that the district court made a clear error of judgment." Halaco Engineering, 843 F.2d at 379.
 
 
 12
 Questions of foreign law, like all questions of law, are reviewed de novo. Kaho v. Ilchert, 765 F.2d 877, 882 (9th Cir.1985); Fed.R.Civ.P. 44.1.
 
 DISCUSSION
 
 13
 I. Propriety of Discovery Orders and Sanctions
 
 A. Timeliness of Objection
 
 14
 TFC served its discovery requests and interrogatories on Beijing in July 1990. Beijing did not object to those requests on the grounds that PRC law did or might interfere with its ability to comply. When TFC filed a motion to compel a response, Beijing's answer did not raise the potential problem of PRC secrecy law. Nor did Beijing raise the issue in its motion for stay of discovery before the district court, or before the Ninth Circuit. Beijing first raised this issue in February 1991 in its reply to TFC's motion for contempt sanctions.
 
 
 15
 Because of this delay, TFC contends that Beijing has waived any objection based on the secrecy laws. Fed.R.Civ.P. 33 and 34 provide that discovery requests must be responded to within 30 (or in some cases 45) days. It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection. Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir.1981); D.Or.Local Rule 230-3.[5] Beijing clearly did not object within the time required by the Federal Rules.
 
 
 16
 Beijing contends that it raised the issue as soon as possible, and cites a declaration from its counsel in the PRC that the State Secrecy Bureau normally will not advise companies about the impact of the secrecy laws until every legal effort has been made to avoid discovery of the information. This argument might justify Beijing's delay in requesting guidance from the Ministry of Justice, although the validity of this argument is open to question, given that Beijing actually requested such guidance before the resolution of its stay petition in the Ninth Circuit. But in any event, the argument cannot justify Beijing's failure to raise the issue before the district court as an objection to TFC's discovery request, or at the very least in response to the motion to compel.[6] Its objections to the discovery orders and the contempt adjudication based on the PRC secrecy laws were therefore waived.
 
 
 17
 Although Beijing did not invoke the State Secrecy laws in a timely fashion in opposition to the discovery and contempt orders, we cannot resolve this case without reaching the merits. In its April 4 order, the district court indicated that it would be willing to vacate the contempt order if Beijing complied with the discovery order within 60 days. On May 15, Beijing produced some information and produced a document from the Ever Bright Group, an arm of the PRC, indicating that PRC law barred it from disclosing the remainder of the requested information. While the issue of the validity of the discovery orders was waived by Beijing, the issue of whether it complied with those orders arose only on May 15, 1991. In order to decide whether Beijing's compliance was adequate, we must consider the effect of the PRC secrecy statutes.
 
 B. Deference to PRC Law
 
 18
 Beijing contends that the state secrecy laws prohibit it from disclosing the information the district court ordered it to provide, that it would be subject to criminal prosecution if it did disclose such information, and that this prohibition necessitates the reversal of the discovery order and the contempt sanctions against it. The district court explicitly accepted Beijing's contention that the PRC's State Secrets Act barred disclosure of the information in question. We do so as well.[7]
 
 
 19
 That does not end the inquiry, however. The PRC's admitted interest in secrecy must be balanced against the interests of the United States and the plaintiffs in obtaining the information. In Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (Societe Internationale ), the Supreme Court confronted a similar issue. In that case, the petitioner, a Swiss company, objected to discovery requests on the grounds that producing Swiss bank records would violate Swiss law. The Swiss Federal Attorney had issued an order prohibiting their disclosure. The district court expressly concluded that the Swiss company acted in good faith in seeking to comply, and the company did disclose over 190,000 documents during discovery. The Supreme Court held that the company had failed to comply with the order, id. at 208, 78 S.Ct. at 1094, but concluded that the sanction of dismissal of its complaint was inappropriate. It reached this conclusion because "petitioner's failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control. It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction...." Id. at 211, 78 S.Ct. at 1095.
 
 
 20
 Cases since Societe Internationale, however, have emphasized that a foreign-law prohibition will not always excuse compliance with a discovery order. In Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 544 n. 29, 107 S.Ct. 2542, 2556 n. 29, 96 L.Ed.2d 461 (1987) (Aerospatiale ), the Supreme Court stated that "[i]t is well settled that such [foreign 'blocking'] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."[8] Accord United States v. Vetco, Inc., 691 F.2d 1281, 1287 (9th Cir.) ("Societe Internationale did not erect an absolute bar to summons enforcement and contempt sanctions whenever compliance is prohibited by foreign law."), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).
 
 
 21
 Instead, Aerospatiale endorsed the balancing test contained in the Restatement (Third) of Foreign Relations Law § 442(1)(c). Under that test, factors that are relevant in deciding whether or not foreign statutes excuse noncompliance with discovery orders include:
 
 
 22
 the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.
 
 
 23
 Id.; Aerospatiale, 482 U.S. at 544 n. 28, 107 S.Ct. at 2556 n. 28. As the Court noted, this list of factors is not exhaustive. Other factors that we have considered relevant are " 'the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, ... [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.' " Vetco, 691 F.2d at 1288 (quoting the Restatement (Second) of Foreign Relations Law § 40). We consider each factor in turn.
 
 
 24
 Importance of the Documents. Where the outcome of litigation "does not stand or fall on the present discovery order," or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws. See In re Westinghouse Elec. Corp. Uranium Contracts Litigation, 563 F.2d 992, 999 (10th Cir.1977). Where the evidence is directly relevant, however, we have found this factor to weigh in favor of disclosure. Vetco, 691 F.2d at 1290. In this case, the information sought is not only relevant to the execution of the judgment, it is crucial. Without information as to Beijing's assets, TFC cannot hope to enforce the judgment. The execution proceedings, and in some sense the underlying judgment itself, will be rendered meaningless. The importance of the documents to the litigation weighs in favor of compelling disclosure.
 
 
 25
 Specificity of the Request. A second consideration in evaluating a discovery request is how burdensome it will be to respond to that request. Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged. In this case, Beijing has not objected to the burdensome nature of the discovery request, apart from the fact of its illegality. While TFC sought a great deal of information, all of it was directed at identifying Beijing's current assets in order to execute the judgment. Further, TFC's request was reasonably limited in time: it sought only recent financial documents. Beijing has not made this factor an issue, and it does not favor nondisclosure here.
 
 
 26
 Location of Information and Parties. The fact that all the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business. Reinsurance Co. of America v. Administratia Asigurarilor de Stat, 902 F.2d 1275, 1281 (7th Cir.1990); Westinghouse, 563 F.2d at 998. In this case, Beijing has no United States office. All of its employees, and all of the documents TFC has requested, are located in the PRC. This factor weighs against requiring disclosure.
 
 
 27
 Alternate Means of Obtaining Information. If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law. Cf. In re Sealed Case, 825 F.2d 494, 499 (D.C.Cir.) (reversing contempt sanction, noting that it is "relevant to our conclusion that the grand jury is not left empty-handed by today's decision"), cert. denied, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987). In this circuit, the alternative means must be "substantially equivalent" to the requested discovery. Vetco, 691 F.2d at 1290; see SEC v. Minas de Artemisa, 150 F.2d 215, 219 (9th Cir.1945). Beijing has not suggested any such alternatives, as did the appellants in Vetco.
 
 
 28
 One possible alternative would be to seek information from Beijing's nominal parent corporation, China Ever Bright Holdings Co., which is incorporated in Hong Kong. However, as Beijing itself takes pains to note, China Ever Bright is a separate entity from Beijing, and financial information about China Ever Bright is not relevant to Beijing's financial position. A second alternative would be to subpoena information from sources in the United States who have dealt with Beijing and might have financial information. TFC in fact has attempted to do this, issuing subpoenas to the Bank of China, Mesta Engineering Corp., Shougang Mechanical Equipment of Pennsylvania, and Solid Beam Industrial Co. TFC was not successful in obtaining information from these sources. Indeed, it failed in part because Beijing and its affiliates actively opposed those subpoenas.[9] Further, Beijing concedes that any information received from these sources would not include the core financial information requested by TFC. Finally, TFC has requested depositions of various Beijing officials, which obviously cannot be provided by anyone other than Beijing.
 
 
 29
 TFC appears to have done everything in its power to collect information which will enable it to enforce the judgment. To date, it has been unsuccessful. The absence of other sources for the information TFC seeks is a factor which weighs strongly in favor of compelling disclosure.
 
 
 30
 Balance of National Interests. This is the most important factor. We must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would "affect important substantive policies or interests" of either the United States or the PRC. Restatement (Third) of Foreign Relations Law § 442 comment c.[10] In assessing the strength of the PRC's interests, we will consider "expressions of interest by the foreign state," "the significance of disclosure in the regulation ... of the activity in question," and "indications of the foreign state's concern for confidentiality prior to the controversy." Id. (emphasis added).
 
 
 31
 In this case, the PRC's State Secrecy Bureau has directly expressed an interest in the outcome of this case. In its response to Beijing's request for guidance, the Bureau wrote: "[T]his Bureau hereby orders your Company not to disclose or provide the information and documents requested by the United States District Court for the District of Oregon except Items 1, 2, 3(f), 9 and 10. Your Company shall bear any or all legal consequences should you not comply with this order."
 
 
 32
 However, the State Secrecy Bureau did not express interest in the confidentiality of this information prior to the litigation in question. Indeed, Beijing routinely disclosed information regarding its assets, inventory, bank accounts, and corporate structure to the general public, for example through a trade brochure, and to companies with whom it did business, see Richmark, 937 F.2d at 1447; Timber Falling, No. 90 Civ. 6838 (KTD) (S.D.N.Y. July 19, 1991). The State Secrecy Bureau did not object to the voluntary disclosure of any of this information. It is only now, when disclosure will have adverse consequences for Beijing, that the PRC has asserted its interest in confidentiality.
 
 
 33
 Further, neither Beijing nor the PRC has identified any way in which disclosure of the information requested here will significantly affect the PRC's interests in confidentiality. Those interests, as set forth by the State Secrecy Laws themselves, are in "matters involving national security and interest." Collection of the Laws of the People's Republic of China 1363 Art. 2 (1989). This is defined to include information which "concern[s] the national economy and social development" or disclosure of which may "diminish the country's economic, technological and scientific strength." Id. at Art. 8, Art. 4(7). There is no indication that Beijing, much less the economy of the PRC as a whole, will be adversely affected at all by disclosure of this information. The only likely "adverse" effect on the PRC economy will be that TFC may be able to collect its judgment, something the PRC has no legitimate state interest in preventing.
 
 
 34
 The PRC, then, has asserted an interest (albeit one whose strength is unknown) in the confidentiality of the information in question. This interest must be weighed against the United States' interests in vindicating the rights of American plaintiffs and in enforcing the judgments of its courts. The former interest has been described as "substantial," see In re Insurance Antitrust Litigation, 938 F.2d 919, 933 (9th Cir.1991), petitions for cert. filed Jan. 9 and 13, 1992, and the latter as "vital," Reinsurance, 902 F.2d at 1280. To be sure, these interests are not so strong that they would compel disclosure in all cases. See id. at 1281 (Romanian interest in secrecy outweighs United States' interest in enforcing private judgments). In this case, however, because Beijing and the PRC have been unable to identify any way in which the PRC's interests will be hurt by disclosure, the interests of the United States must prevail. The balancing of national interests is therefore a factor which weighs in favor of disclosure.
 
 
 35
 Hardship to Beijing. The effect that a discovery order is likely to have on the foreign company is another factor to be considered. If Beijing is likely to face criminal prosecution in the PRC for complying with the United States court order, that fact constitutes a "weighty excuse" for nonproduction. Societe Internationale, 357 U.S. at 211, 78 S.Ct. at 1095. In this case, Beijing has in fact been ordered by the Chinese government to withhold the information, and has been told that it will bear the "legal consequences" of disclosing the information.[11] Beijing therefore seems to be placed in a difficult position, between the Scylla of contempt sanctions and the Charybdis of possible criminal prosecution.
 
 
 36
 However, if the hardship is self-imposed, or if Beijing could have avoided it, the fact that it finds itself in an undesirable position will not work against disclosure of the requested information. See Vetco, 691 F.2d at 1289-90 (hardship not a factor because it was "avoidable"). In this case, the discovery dispute arose only because Beijing refused to post a supersedeas bond or letter of credit to stay execution of the judgment pending appeal, as required by Fed.R.Civ.P. 62(d). See United States v. $2,490.00 in United States Currency, 825 F.2d 1419, 1421 (9th Cir.1987). Beijing even now could post a supersedeas bond pending the outcome of its petition for certiorari, or it could pay the judgment. Either of these courses of action would keep it from having to violate either the district court's orders or the PRC's laws.
 
 
 37
 Beijing objects that requiring either course of action would violate its "immunity" from execution under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1610(b). Beijing misreads that provision. Section 1610 provides for the execution of judgments against foreign sovereigns. It is true that section 1610 does not empower United States courts to levy on assets located outside the United States. That provision merely limits the power of United States courts, however; it does not vest in Beijing a "right" not to pay a valid judgment against it. See Frolova v. Union of Soviet Socialist Republics, 558 F.Supp. 358, 361 (N.D.Ill.1983) (purpose of section 1610 is to provide a remedy against foreign states who fail to pay judgments against them), aff'd, 761 F.2d 370 (7th Cir.1985). TFC can seek to execute the judgment in whatever foreign courts have jurisdiction over Beijing's assets, see Nippon Emo-Trans Co. v. Emo-Trans, Inc., 744 F.Supp. 1215, 1218 (E.D.N.Y.1990), but TFC needs discovery in order to determine which courts those are. Beijing may be able as a practical matter to conceal its assets from the district court and therefore avoid execution of TFC's judgment, but it has no right to do so, and it certainly has no right to avail itself of the United States judicial system for purposes of appeal while at the same time seeking to evade the judgments of that judicial system.
 
 
 38
 Because Beijing could--and still can--avoid the hardship disclosure would place on it, that hardship is not a factor weighing against disclosure.
 
 
 39
 Likelihood of Compliance. If a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance with the order. In this case, it may be impossible to force Beijing to comply. The imposition of sanctions in the amount of $10,000 a day, sanctions which have already grown larger than the underlying judgment, has failed to move Beijing. It is perhaps unrealistic to expect that a PRC court will enforce an order requiring Beijing to violate PRC law. Compliance therefore seems unlikely, a factor counseling against compelling discovery.
 
 
 40
 Nonetheless, the discovery and contempt orders may be of some significance. While Beijing apparently has no assets in the United States, it has in the past done substantial business in this country. Should it wish to do business here in the future, it would have to pay the judgment or risk having its assets seized and its business interrupted. In addition, a clear statement that foreign corporations which avail themselves of business opportunities in the United States must abide by United States laws might have a substantial effect on the way Beijing and other corporations do business in the United States in the future. Our recent decision in Insurance Antitrust is instructive. In that case, the court concluded that an injunction against Lloyd's of London would not be enforced by the British courts. It nonetheless upheld the injunction because it could be enforced within the United States, and because it would send a message to companies who wished to do business in the United States in the future. 938 F.2d at 933.
 
 
 41
 In short, full compliance by Beijing with the order of the district court is unlikely. The order may nonetheless produce partial compliance, and might be effective in other ways as well. While the likelihood of noncompliance does weigh against compelling disclosure, we think the weight of this factor is lessened by these mitigating circumstances.
 
 
 42
 Conclusion. Taking all of the aforementioned factors into consideration, the balance tips significantly (although not overwhelmingly) in TFC's favor. The United States has a strong interest in enforcing its judgments which outweighs the PRC's interest in confidentiality in this case. The information sought is vital to the litigation and cannot be obtained elsewhere. Finally, Beijing can avoid any hardship it may face by following normal litigation procedure and posting a supersedeas bond. If it does so, both the district court and TFC have indicated a willingness to forego contempt sanctions. The only factors weighing against compelling disclosure are that Beijing has the information in the PRC and may choose not to disclose it in spite of the court's order. Were these factors alone sufficient, a foreign corporation could avoid its discovery obligations in almost every instance. We therefore conclude that the order compelling discovery should be upheld in spite of the PRC secrecy statute.
 
 
 43
 In reaching this conclusion, we are not unmindful of the difficulties foreign corporations face in doing business in the United States, nor of the rather delicate nature of relations between sovereign states. We sincerely hope that today's decision will not adversely affect the cordial business relationship between the United States and the PRC. However, international business requires the accommodation of different legal climates. Just as United States companies doing business in the PRC must expect to abide by PRC law, when Beijing availed itself of business opportunities in this country, it undertook an obligation to comply with the lawful orders of United States courts. We do not minimize the difficult situation in which Beijing has been placed. Here, however, where the PRC has not demonstrated a strong interest in keeping the requested information confidential, and where Beijing has options open to it which violate neither United States nor PRC law, Beijing cannot escape compliance with the district court's discovery orders.
 
 C. Good Faith Compliance
 
 44
 Beijing next contends that, even if the discovery order was valid, the contempt sanction should be vacated because Beijing has attempted in good faith to comply with the court's orders. It is true that contempt is inappropriate where a party has taken "all the reasonable steps" it can take to comply. Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 466 (9th Cir.1989). The Restatement (Third) of Foreign Relations Law § 442(2)(b) provides that "a court or agency should not ordinarily impose sanctions of contempt ... on a party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information or of failure to make a good faith effort" to secure permission from the foreign government to disclose the information.
 
 
 45
 In Vetco, we required a foreign corporation asserting a blocking statute as a defense to make an affirmative showing of its good faith in seeking permission to disclose the information. 691 F.2d at 1287 ("This case is not controlled by Societe Internationale. We have no finding that appellants have made good faith efforts to comply with the summonses. Compare Societe Internationale, 357 U.S. at 201, 78 S.Ct. at 1090 (explicit finding by Special Master of good faith confirmed by district court)."); see also Restatement (Third) of Foreign Relations Law § 442 comment h ("Parties to litigation ... may be required to show that they have made serious efforts before appropriate authorities of states with blocking statutes to secure release or waiver from a prohibition against disclosure.") (emphasis added).
 
 
 46
 Beijing has made no such affirmative showing here. The district court did not find that Beijing acted in good faith in attempting to obtain a waiver. Nor is good faith evident from the record. Beijing fought disclosure for several months before raising the foreign law problem, even after the district court issued an order on October 15, 1990 compelling disclosure. Beijing's effort to seek a waiver consisted of a letter to the Ministry of Justice on January 28, 1991, in which it noted the "broad scope" of the discovery order, pointed out to the Ministry the legal provision it felt barred disclosure, and asked whether it was permitted to disclose the information under the State Secrets Act. While Beijing did ask whether there was "a procedure through which Beijing Ever Bright may seek the permission of the government to disclose the information it is not presently permitted to disclose," it did not in fact seek such permission, but rather requested only "guidance" on the legal question. In spite of this, Beijing asserted that the State Secrets Act prevented it from complying in February 1991, two months before the Ministry even responded to this request. Beijing does not appear to have made a good faith effort to clarify PRC law or to seek a waiver of the secrecy statutes before refusing to comply with the district court order. For these reasons, the district court acted within its discretion in sanctioning Beijing for its noncompliance.
 
 D. Right to Appeal
 
 47
 Compliance with a discovery order renders moot an appeal of that order. E.E.O.C. v. St. Regis Paper Co.--Kraft Division, 717 F.2d 1302, 1303 (9th Cir.1983); SEC v. Laird, 598 F.2d 1162, 1163 (9th Cir.1979). Beijing argues that a civil contempt sanction is an inappropriate means to enforce a discovery order, since the point of such a sanction is to force the contemnor to comply with the order. Civil contempt, Beijing reasons, therefore operates to deny the contemnor its right to an appeal. Beijing seeks to have the contempt sanctions against it overturned on this ground. We reject this argument.
 
 
 48
 It is well established that even the assertion of constitutional rights may be burdened by requiring those who assert them to risk contempt. For example, a witness who asserts the privilege against self-incrimination in the face of a subpoena risks contempt sanctions if his belief about the scope of that privilege is erroneous. The witness is put "to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal." Maness v. Meyers, 419 U.S. 449, 460, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975) (citations omitted).
 
 
 49
 Beijing was put to a similar choice here. Beijing is entitled to resist the discovery order, but it will face contempt sanctions if it loses its appeal on the merits. St. Regis Paper, 717 F.2d at 1303 ("Had St. Regis firmly objected to complying with the subpoena pending the outcome of this appeal, it could have refused to comply with the district court's order of enforcement. Although it may have then risked civil contempt sanctions, its action would have been defensible if the company was in fact unable to comply with the order....") (emphasis added).
 
 
 50
 This is in fact precisely what Beijing did. Not wishing to moot its objections to the discovery order, Beijing chose not to comply and to risk contempt sanctions even when the district court issued its March 4 order (which made clear that the court would sanction further noncompliance). By so doing, Beijing preserved its right to appeal to this court. Had Beijing prevailed on the merits of its appeal, the contempt order would have been reversed as well. See Thomassen v. United States, 835 F.2d 727, 732 (9th Cir.1987). Since we reject Beijing's claim on the merits, it was in contempt of court and the sanctions should be upheld as well.
 
 
 51
 Being forced to disobey an order of the district court in order to obtain review of the court's ruling seems a harsh choice. That choice is compelled by the case law, however. We therefore reject Beijing's argument that the contempt order denied its right to an effective appeal.
 
 II. Nature of the Sanctions
 A. Improper Purpose
 
 52
 Beijing objects that the contempt sanction is improper because it is being used as an execution tool to collect the judgment. Such a use would indeed be improper. See Shuffler v. Heritage Bank, 720 F.2d 1141, 1147 (9th Cir.1983). In this case, though, the district court's order is directed solely at Beijing's failure to comply with the discovery orders. The contempt is to continue until Beijing complies with those orders, and can be vacated only if Beijing complies with those orders. Where the purpose of a civil contempt sanction is to coerce good faith efforts to comply with a discovery request, contempt is proper. Combs v. Ryan's Coal Co., 785 F.2d 970, 982 (11th Cir.), cert. denied, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986). That appears to have been the purpose of the sanctions here.[12]
 
 B. Due Process
 
 53
 Beijing claims that the contempt sanction imposed against it was really a criminal contempt citation, and that it was denied the Fifth Amendment due process protections that accompany a criminal contempt citation. Alternatively, Beijing claims that if the sanction was a coercive civil sanction, it was improper.
 
 
 54
 TFC contends that we should consider none of these arguments because Beijing has waived them by failing to raise them before the district court. It is true that Beijing's rights, including its due process rights, can be waived if they are not raised promptly. Confederated Tribes v. Washington, 608 F.2d 750, 752 (9th Cir.1979). Waiver is inappropriate in this case, though, because the propriety and even the nature of the contempt sanction can change over time. See United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (test for civil contempt on appeal is whether contemnor has present ability to comply, not whether it could have complied in the past); SEC v. Elmas Trading Corp., 824 F.2d 732, 732-33 (9th Cir.1987) (civil contempt may become criminal over time).
 
 
 55
 Beijing first contends that the contempt sanction against it, although nominally a coercive civil sanction, was really criminal in nature. There is no support for this argument. Whether contempt is criminal or coercive civil is determined by the purpose of the sanction. If the sanction is intended to punish past conduct, and is imposed for a definite amount or period without regard to the contemnor's future conduct, it is criminal. If the sanction is intended to coerce the contemnor to comply with the court's orders in the future, and the sanction is conditioned upon continued noncompliance, it is civil. See, e.g., Hicks v. Feiock, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988); Portland Feminist Women's Health Center v. Advocates for Life, 877 F.2d 787, 790 (9th Cir.1989); Elmas Trading, 824 F.2d at 732. In this case, the stated purpose of the sanction is to force Beijing to comply with the discovery order; the sanction is not for a definite amount, but increases indefinitely until such time as Beijing complies with the court's orders; and Beijing can move to vacate the sanction if it complies with the underlying discovery order. There can be no doubt that the sanction is a coercive civil contempt sanction.
 
 
 56
 Beijing next contends that the order of a civil coercive sanction was inappropriate for four reasons. First, Beijing contends that it has no "present ability" to comply with the discovery order because doing so would violate PRC law. Beijing misapprehends the nature of the present ability requirement. To prevail here, Beijing bears the burden of proving that it is "factually impossible " to comply with the district court's order--for example, because the documents are not in Beijing's possession or no longer exist. Rylander, 460 U.S. at 757, 103 S.Ct. at 1552 (emphasis added); Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 780-81 (9th Cir.1983). Beijing has made no such showing here. Indeed, it has never contested that it has and could disclose the information TFC seeks. All Beijing has demonstrated is that disclosing the information will result in negative consequences for it, in that it might be prosecuted by the PRC. While Beijing is entitled to have the court consider this factor in its determination of the merits, the potential for injury to Beijing does not suffice to make out a showing of present inability to comply.
 
 
 57
 Second, Beijing contends that the sanction is invalid because the district court made no finding that it would be effective in coercing Beijing to comply. It is true that the sanction of $10,000 a day, which has already surpassed the amount of the underlying judgment, has apparently been insufficient to coerce Beijing to comply. It is also true that the district court should ordinarily take Beijing's financial position into account. In this case, though, the court had no evidence as to Beijing's financial position precisely because Beijing had refused to comply with the discovery orders. Where the contemnor is the only one who possesses the relevant financial information, and chooses not to disclose it, "[h]is failure to present any evidence on the record may not be charged either against the [opposing party] or result in a holding that the district court abused its discretion in imposing the sanction." In re Grand Jury Witness, 835 F.2d 437, 443 (2nd Cir.1987), cert. denied sub nom. Arambulo v. United States, 485 U.S. 1039, 108 S.Ct. 1602, 99 L.Ed.2d 917 (1988). In any event, were we to conclude that $10,000 per day was insufficient to coerce compliance, the appropriate solution would seem to be to remand the case to the district court so that it can increase the sanction. Dismissing the contempt sanction in its entirety, the result Beijing seeks, certainly would not be warranted.
 
 
 58
 Third, Beijing complains that the civil contempt order is no longer warranted because it has lost all coercive effect. See Elmas Trading, 824 F.2d at 732-33. Beijing has provided no support for this argument. If, as Beijing argues above, the sanction is insufficient to cause Beijing to comply, then it has never had a coercive effect. If it had some coercive effect in the past, that effect increases with each passing day as the contempt fine grows larger. Nothing has occurred in the interim that would have caused the sanction to lose its coercive effect.
 
 
 59
 Finally, Beijing complains that the civil contempt sanction, if coercive, should be payable to the court rather than to TFC. This appears to be correct. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir.1986) ("If the fine, or any portion of the fine, is coercive, it should be payable to the court, not General Signal."). The district court therefore erred in making the contempt sanction payable to TFC. However, this error does not require the panel to vacate the contempt order, as Beijing suggests. See id. Instead, we modify the contempt order to make the fine payable to the court. As modified, we conclude that the nature of the sanctions imposed was appropriate.
 
 III. Amount of Discovery Sanctions
 
 60
 In addition to the contempt fine, the district court awarded approximately $24,000 in attorney's fees and costs to TFC as a discovery sanction. Beijing challenges the amount of this sanction on two grounds.
 
 
 61
 First, Beijing contends that the district court had the power to award only those expenses incurred because of Beijing's contempt--that is, only those expenses incurred after March 14, 1991. Beijing's argument is apparently premised on the theory that the award was a compensatory civil contempt sanction. That is incorrect. The district court explicitly stated that the award was made pursuant to Fed.R.Civ.P. 37. Rule 37(a)(4) and Rule 37(b)(2) allow the award of fees and expenses incurred both as a result of Beijing's contempt and in obtaining the order compelling discovery. See, e.g., Ohio v. Arthur Andersen & Co., 570 F.2d 1370, 1375 (10th Cir.) (awarding expenses before and after the time of contempt against party who refused to disclose information based on a foreign secrecy statute), cert. denied, 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978); Remington Products v. North American Philips Corp., 107 F.R.D. 642, 644-45 (D.Conn.1985) (same); Aerwey Laboratories v. Arco Polymers, Inc., 90 F.R.D. 563, 565 (N.D.Ill.1981) (expenses incurred in preparing motion to compel properly awarded under Rule 37). In this case, TFC submitted only fees and costs incurred in obtaining a court order compelling discovery and in litigating the contempt issues. The district court was well within its broad discretion in awarding those fees.
 
 
 62
 Beijing's second objection is that the district court failed explicitly to consider the twelve factors used in this circuit in calculating fee awards. See General Signal, 787 F.2d at 1380-81 (remanding award of fees for consideration of these factors). In this case, however, Beijing did not object to the amount of fees claimed, except for the objection discussed above. It would be pointless to require a district court to make written findings on twelve separate factors where the opposing party does not contest the amount of the award.
 
 
 63
 For these reasons, we affirm the amount of the discovery sanctions awarded pursuant to Rule 37.IV. Sanctions on Appeal
 
 
 64
 In its brief, TFC requests that the panel award it sanctions on appeal. Sanctions on appeal are appropriate where "the result is obvious or the appellant's arguments are wholly without merit." Smith v. C.I.R., 800 F.2d 930, 936 (9th Cir.1986). While Beijing's arguments are ultimately unsuccessful, they present difficult issues which could be resolved in Beijing's favor. As a result, sanctions on appeal are inappropriate.
 
 CONCLUSION
 
 65
 For the foregoing reasons, the contempt award is MODIFIED by making the fine payable to the court. As modified, the judgment is AFFIRMED.
 
 
 
 [1]
 In an earlier appeal in this case, a panel of this court held it had no jurisdiction to review Beijing's appeal of the post-judgment discovery order absent a finding of contempt. Richmark Corp. v. Timber Falling Consultants, 937 F.2d 1444, 1449 (9th Cir.1991), petition for cert. filed Jan. 13, 1992. However, a decision of this court issued prior to Richmark seems to hold that civil contempt sanctions are not appealable, although the underlying order is. See Hughes v. Sharp, 476 F.2d 975, 975 (9th Cir.1973). Richmark is not binding on this panel as the law of the case on the question of our jurisdiction over Beijing's appeal of the civil contempt sanctions, since the law of the case doctrine does not apply to questions of appellate jurisdiction. Duran v. City of Douglas, 904 F.2d 1372, 1375 (9th Cir.1990)
 However, we need not decide whether Richmark and Hughes conflict or, if they do, which is correct. We have jurisdiction now if the cases do not conflict, or if Richmark is correct. If Hughes is correct, Beijing preserved its rights by filing a timely notice of appeal of the order itself; we will not find an erroneous decision by this court, if Richmark can be so characterized, to have deprived Beijing of its right to appeal at all.
 
 
 [2]
 Richmark affirmed the default judgment on July 3, 1991. In addition to holding Beijing could appeal post-judgment discovery orders only after failing to comply with them and being held in contempt, see supra note 1, Richmark held that the district court had general personal jurisdiction over Beijing, that Beijing was properly served, and that Beijing's conduct in failing to appear was culpable. 937 F.2d at 1449
 
 
 [3]
 This appeal was consolidated with Beijing's appeal from the default judgment, and the district court's decision was affirmed. Richmark, 937 F.2d at 1445
 
 
 [4]
 Specifically, Beijing disclosed the nature of its business, the names and addresses of its offices, and the value and location of its furniture, equipment, and machinery. It refused to disclose the value and location of its cash, real property, bank accounts, stock and bond holdings, other financial portfolios, notes, inventories, accounts receivable, or any other information concerning its assets
 
 
 [5]
 Otherwise valid local rules have the force of law. See United States v. Yonkers Bd. of Educ., 747 F.2d 111, 112 (2nd Cir.1984)
 
 
 [6]
 Nor is Beijing helped by Clemente v. United States, 766 F.2d 1358, 1367 (9th Cir.1985), cert. denied, 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986). Clemente held that a district court cannot find a party in contempt because it has not complied with an order until all attempts to stay that order have been exhausted. Id. Here, Beijing's final stay petition was denied February 19, 1991. Contempt was not imposed until April 4, and in the intervening period the district court explicitly gave Beijing more time to comply
 
 
 [7]
 For this reason, the "act of state" doctrine does not apply. That doctrine comes into play only where a United States court declares invalid the official act of a foreign sovereign. W.S. Kirkpatrick & Co. v. Environmental Tectonics Int'l Corp., 493 U.S. 400, 405, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990). In this case, we expressly accept as valid the Ever Bright Group's letter interpreting the State Secrets Act. We have neither the power nor the expertise to determine for ourselves what PRC law is
 
 
 [8]
 The Court went on to note that "[i]t would be particularly incongruous to recognize such a preference for corporations that are wholly owned by the enacting nation." Id. at 545 n. 29, 107 S.Ct. at 2556 n. 29
 
 
 [9]
 See, e.g., Timber Falling Consultants v. Solid Beam Industrial Corp., 90 Civ. 6838 (KTD) (S.D.N.Y. July 19, 1991) (sanctioning Solid Beam for falsely asserting its lack of connection with Beijing in response to subpoena); Richmark Corp. v. Timber Falling Consultants, MS91-120WD (Mag.W.D.Wash. Oct. 11, 1991) (denying on immunity grounds subpoena request regarding Beijing directed against the Chinese Ministry of Foreign Economic Relations and Trade). In addition, a Beijing affiliate known as Ever Bright Timber closed its United States office and left the country after being served with a subpoena by TFC
 
 
 [10]
 Initially, Beijing contends that the court is not empowered to look beyond the Chinese government's assertion of its interest in preventing disclosure to determine the strength of that interest. Beijing is in error. As we have recognized, in balancing sovereign interests the court is "necessarily interested in the depth and nature of [the foreign sovereign's] interest." Timberlane Lumber Co. v. Bank of America, 549 F.2d 597, 607 (9th Cir.1976). Indeed, Beijing itself appears to concede in its brief that the court must balance the competing national interests at stake
 
 
 [11]
 Beijing has not, however, provided any indication of what those consequences are likely to be
 
 
 [12]
 The fact that Beijing could avoid the discovery order by posting a supersedeas bond should not change this result. In Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 516 (9th Cir.1992), the Ninth Circuit held that civil contempt could be used to coerce defendants into posting a bond because such an order "imposed a duty to post security, not a duty to pay a judgment...." Id.; accord Donovan v. Mazzola, 716 F.2d 1226, 1239 n. 9 (9th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). If contempt is a lawful means to enforce an order to post a bond, surely the contempt in this case is not rendered unlawful merely because Beijing could choose to post a bond and therefore moot the discovery order