**In re RUBBER CHEMICALS ANTITRUST LITIGATION.**

**No. C04–1648 MJJ (BZ).**

United States District Court, N.D. California.

May 9, 2007.

Joseph M. Barton, Paul F. Bennett, C. Andrew Dirksen, Steven O. Sidener, Gold Bennett Cera & Sidener LLP, Richard Alexander Saveri, Guido Saveri, Lisa Saveri, Saveri & Saveri Inc., Michael Paul Lehmann, Furth Lehmann & Grant LLP, William J. Blechman, Glancy & Binkow LLP, Daniel S. Mason, Attorney at Law, San Francisco, CA, Yvonne M. Flaherty, W. Joseph Bruckner, Yvonne M. Flaherty, Lockridge Grindal Nauen PLLP, Minneapolis, MN, Karen Dixon Fineran, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Linda Phyllis Nussbaum, Richard Adam Koffman, Cohen Milstein Hausfeld & Toll, P.L.L.C., Mark A. Racanelli, O'Melveny & Meyers LLP, New York, NY, Michael D. Hausfeld, Cohen Milstein Hausfeld & Toll, Alexandre De Gramont, Kent A. Gardiner, Crowell & Moring, Washington, DC, H. Laddie Montague, Jr., Ruthanne A. Gordon, Berger & Montague, P.C., Philadelphia, PA, Dianne M. Nast, Roda & Nast PC, Michael G. Nast, Roda & Nast, Lancaster, PA, Michael L. Roberts, Roberts Law Firm, AR, Jack Morrison, Jr., Thom-

as R. Houlihan, Amer Cunningham, Michael R. Rickman, The Goodyear Tire & Rubber Company, Akron, OH, Richard A. Arnold, William J. Blechman, Kenny Nachwalter, Miami, FL, Edmund Wilson Searby, Walter W. Noss, Scott & Scott, LLC, Chagrin Falls, OH, A. Scott Ross, Aubrey B. Harwell, Neal & Harwell, Nashville, TN, Daniel Allen Sasse, Roger Scott Feldmann, Van–Dzung Vu Nguyen, Crowell & Moring LLP, Irvine, CA, for Plaintiffs.

Michael A. Sitzman, Gibson Dunn & Crutcher LLP, John Guyler White, Richard Allen Jones, Covington & Burling, San Francisco, CA, Adam Joseph Di Vincenzo, D. Jarrett Arp, Gibson, Dunn & Crutcher, Ian T. Simmons, O'Melveny & Myers LLP, Washington, DC, Andrew Zachary Edelstein, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, Robert Anthony Klein, Conrad O'Brien Gellman & Rohn, Philadelphia, PA, Jason M. Koral, William J. Schwartz, Cooley Godward Kronish LLP, Rachel J. Nash, Jason Brown, Ropes & Gray, Barry A. Bohrer, E. Scott Schirick, Morvillo Abramowitz Grand Iason Anello & Bohrer PC, New York, NY, for Defendants.

### ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

ZIMMERMAN, United States Magistrate Judge.

May plaintiff discover communications between a defendant's affiliate and the European Commission that were made pursuant to the Commission's Leniency Program? Based on the particular facts of this case, I conclude it may not and **DENY** plaintiff's motion to compel.

In 2002, attorneys representing defendant Flexsys N.V. met with officials of the European Commission. Flexsys N.V. disclosed the existence of anti-competitive practices in the rubber chemicals industry and solicited immunity from fines for Flexsys N.V. pursuant to the Commission's Leniency Program.[1] Decision of the European Commission dated December 21, 2005 attached as Exhibit D to the Forman Supplemental Declaration filed February 12, 2007 (hereafter "Decision") ¶ 46. Over the next three years the Commission, through its Directorate–General for Competition ("DG–Competition") carried out an extensive investigation during which there were communications between the Commission and its counsel and Flexsys N.V. and its counsel. At the conclusion of its investigation, the Commission issued its 106–page Decision containing highly detailed findings of fact based on specific evidence, including evidence that was submitted by Flexsys N.V.

In 2006, Plaintiff Korea Kumho Petrochemical Co., Ltd. ("Kumho"), filed this complaint against defendant Flexsys America L.P. ("Flexsys"), its affiliate Flexsys N.V., and others, alleging that defendants engaged in unlawful conduct to exclude Kumho from the U.S. rubber chemicals market. Kumho then served Flexsys, but not Flexsys N.V., with requests for documents related to investigations of suspected antitrust violations in the rubber chemicals industry that were conducted by the governments of the United States, Canada, and the European Union.

Flexsys objected to the requests on various grounds. Over the ensuing months, the parties resolved many of the objections. Flexsys produced documents with

---

1. "The European Commission's 'Leniency Program' allows 'cartel participants [to] confess their wrongdoing' in return for prosecu- torial leniency." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 266 n. 18, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004).

respect to the U.S. and Canadian investigations and produced all the business documents that had been produced in Europe. Flexsys refuses to produce the communications between the Commission and Flexsys N.V. which were generated under the Leniency Program (hereafter collectively referred to as the EC documents). Flexsys objects on the principal ground that production would conflict with the policies of a foreign sovereign, which is entitled to comity. Flexsys has submitted a letter from the Commission opposing discovery of the EC documents.[2]

■ The Federal Rules of Civil Procedure authorize party-initiated discovery of any evidence that is relevant to any party's claims or defenses. Fed.R.Civ.P. 26(b)(1). However, Rule 26 grants the court discretion to limit discovery on several grounds, including international comity. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa,* 482 U.S. 522, 544, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). American courts, in supervising pretrial proceedings, should exercise special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign state. *Aerospatiale,* 482 U.S. at 546, 107 S.Ct. 2542.

■ "Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Aerospatiale,* 482 U.S. at 544, 107 S.Ct. 2542 (citing *Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). It is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. *Id.*

■ As a threshold matter, Kumho doubts the position the Commission has taken in this case is even entitled to comity. It first questions whether the European Union is a sovereign entity. As the Supreme Court recognized in *Intel v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004), " 'The European Commission is the executive and administrative organ of the European communities'. . . The Commission exercises responsibility over the wide range of subject areas covered by the European Union Treaty; those areas include the treaty provisions, and regulations thereunder, governing competition." *Id.* at 250, 124 S.Ct. 2466. While the Supreme Court did not expressly hold that the European Union is a sovereign who should be accorded comity, the analysis it conducted in

---

**2.** The Commission feels so strongly about this issue that it has filed briefs amicus curiae in two other cases in which similar issues have arisen. In *In re Methionine Antitrust Litig.,* MDL No. 00–1311 CRB (N.D. Cal. June 17, 2002), Judge Breyer affirmed a special master's report which denied plaintiff's motion to compel. The special master, a retired former judge of this court, had conducted a comity analysis and concluded that "the balance tips strongly in favor of" respecting the Commission's interests, largely because, as here, the documents at issue were not seen as that important and alternative sources for the information existed. Order on Plaintiff's Motion to Compel at 13. In *In* *re Vitamins Antitrust Litig.,* 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23, 2002) and 25815 (Dec. 18, 2002), the court adopted a special master's report which recommended that the documents be produced after the master conducted a comity analysis. While the master's report was sealed, in balancing the comity factors the court concluded that the information there sought did not all originate outside the U.S. and could not be obtained from other sources. The court also doubted that production of the documents would undermine important interests of the Commission based in part on expert testimony not offered in this case. 2002 U.S. Dist. LEXIS 26490 at *127–28.

concluding that the European Commission is a tribunal within the meaning of 28 U.S.C. § 1782(a) is in significant part a comity analysis. *Id.* at 261–62, 124 S.Ct. 2466. Nothing in the Supreme Court's opinion suggests that the European Union should not be treated as a sovereign. Kumho has cited no authority in support of its position and the only authority of which I am aware accords the European Union comity.[3]

Kumho next questions whether the letter directed to the court and signed by Kirtikumar Mehta, Director of DG–Competition, accurately states the views of the Commission. Once again, the Supreme Court has recognized that "DG–Competition, operating under the Commission's aegis, is the European Union's primary antitrust law enforcer." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. at 250, 124 S.Ct. 2466. Far from being a mere "bureaucrat," as Kumho has characterized him, Mr. Mehta seems analogous to the head of the Justice Department's Antitrust Division. His letter states that it "reflects the views of D.G. Competition" and that the Commission will seek leave to act as amicus curiae if desired. Moreover, he has attached to his letter a position paper filed by the Commission with the United States Antitrust Modernization Commission which amplifies the Commission's views. Under these circumstances I conclude that the views expressed in Mr. Mehta's letter and its attachment are the views of the Commission.

■ In undertaking a comity analysis, a court must balance five competing factors: "(1) the importance to the … litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."

*Aerospatiale,* 482 U.S. at 544, 107 S.Ct. 2542 (citing Restatement (Third) of the Foreign Relations Law of the U.S. § 442 (1987)). Applying this analysis, I conclude that principles of comity outweigh the need for production of the EC documents.

■ First, courts are less inclined to ignore a foreign state's concerns where the outcome of litigation "does not stand or fall on the present discovery order," or where the evidence sought is cumulative of existing evidence. *See Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1475 (9th Cir.1992). Here, plaintiff has failed to persuade me of the importance of the EC documents. Plaintiff asserts that they are "highly relevant" to its claim, in that Flexsys N.V. admitted its participation in one or more conspiracies to restrain trade. (*See* Memorandum in Support of Motion to Compel at 5). However, the Commission was investigating whether Flexsys N.V. had entered into a conspiracy to restrain trade and monopolize in Europe. It is not clear how relevant or important any admissions Flexsys N.V. made while seeking leniency from the Commission would be in this case in which plaintiff claims that Flexsys engaged in a conspiracy to exclude plaintiff from the U.S. rubber chemicals market. It is even less clear

**3.** *See Empagran S.A. v. Hoffman–La–Roche Ltd.,* 453 F.Supp.2d 1 (D.D.C.2006). *See also Methionine,* MDL No. 00–1311 CRB (N.D.Cal. June 7, 2002), and *Vitamins,* 2002 U.S. Dist. LEXIS 25815 at *33 ("the concerns of the EC should be addressed out of respect for the EC as a foreign Sovereign").

for documents generated by the Commission.

Flexsys has already produced all the business records Flexsys N.V. turned over to the Commission. It also produced documents relating to the investigation by the U.S. Department of Justice ("DOJ"), including all documents relating to any actual or proposed amnesty, agreement, or plea. Thus, I fail to see the importance or relevance of the EC documents to this litigation in which plaintiff claims that Flexsys sought to exclude it from the U.S. market, not the European market, and plaintiff already has the documents relating to the DOJ investigation of a conspiracy in the U.S.[4] This factor weighs against production.

■ As to the specificity of the request, generalized searches for information whose disclosure is prohibited under foreign law are discouraged. *Richmark Corp.*, 959 F.2d at 1475. Flexsys has not objected on these grounds, and the request for the EC documents seems sufficiently specific. This factor favors production.

As to the third factor, the EC documents did not originate in the United States. According to Flexsys, they were prepared by European counsel for Flexsys N.V. and by officials of the Commission, which sits in Belgium. In its letter the Commission states that the documents requested by Kumho include confidential Commission documents that were provided to the parties to allow them to exercise their rights of defense in the Commission's proceedings. (*See* Mehta Letter dated April 17, 2007, at 2). The fact that Flexsys has access to these documents in the U.S. is not dispositive. The documents were created, transmitted, and used only in Europe and in conjunction with the European enforcement proceedings. This factor weighs against production.

The fourth factor in the comity analysis is whether the information sought can be obtained through alternative means. *See Aerospatiale*, 482 U.S. at 544, 107 S.Ct. 2542. If the information sought can easily be obtained elsewhere, there is little or no reason to offend foreign law. Here, Flexsys has produced the documents exchanged with the DOJ in the course of its investigation, including any amnesty or plea agreement. This information is likely to be more relevant to Kumho that the EC documents, since Kumho asserts that Flexsys conspired to keep it out of the U.S. market and any admission made to DOJ likely involves an admission of wrongdoing within the U.S.

In addition, Kumho admits that the Commission issued a lengthy Decision detailing the entire alleged price-fixing conspiracy "communication-by-communication"; an opinion that, according to Kumho, "recites the entire file which was provided to Flexsys"; an opinion to which Kumho has access and has submitted to this Court. (Memorandum in Support of Motion to Compel at 8–9). Since Kumho's request is, in large part, cumulative of information it already has, I find that the available alternative means of obtaining the information Kumho needs weighs against production.[5]

Finally, a court must determine the extent to which noncompliance with the request would undermine important inter-

---

4. In an abundance of caution, I reviewed the EC documents *in camera*. My review confirmed their lack of importance to this litigation. Specifically, I found no reference to Kumho or to any conduct aimed at excluding anyone from the U.S. market.

5. Disavowal by Flexsys N.V. in this litigation of the admissions it made in Europe might alter the analysis of this factor.

ests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Aerospatiale,* 482 U.S. at 544, 107 S.Ct. 2542. This requires a balancing of comity with the underlying policies of the Federal Rules of Civil Procedure.

The Commission states that given the crucial investigative and evidentiary value of corporate statements and voluntary submissions, the protection of these documents is "indispensable to ensure the viability and efficacy of the Leniency Programme," which the Commission has described as the E.U.'s most effective tool in combating illegal cartels. (*See* Mehta Letter dated April 17, 2007, at 2). The Commission also states that "any response to a discovery request covering [the information sought by Kumho] would conflict with Flexsys' obligations under E.C. law." *Id.* Although this investigation is completed, the Commission argues that production of the EC documents would undermine its ability to initiate and prosecute future investigations by creating disincentives to cooperate with the Commission and would prejudice future investigations.

Taken as a whole, the Commission's letter is a strong objection to the production of the statements sought by Kumho, and raises some concerns that discovery of the EC documents could impact U.S.—E.U. cooperation in the enforcement of the antitrust laws. It seems that any marginal benefit that the plaintiff would gain from disclosure is outweighed by the impact that disclosure will have on the Commission's interests in the effective enforcement of its competition laws and its cooperation with the U.S. to enforce those laws internationally, especially considering that the other factors substantially disfavor production.

In this case, a foreign entity has taken a clear position and articulated reasons why it believes production of the requested documents would harm its interests. Comity is a sensitive balance, but having balanced the conflicting interests of comity and discovery, I find that in this case the principles of comity outweigh the policies underlying discovery. It is therefore **ORDERED** that the Motion to Compel is **DENIED.**